IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2013 JAN 22 P 1: 40

CLERK P Cur
SO. DIST. OF GA.

ANTHONY DAVILLA,

    Plaintiff,

vs.

NATIONAL INMATE APPEALS
COORDINATOR, ROBIN GLADDEN,
General Counsel; REGIONAL
ADMINISTRATIVE REMEDIES
COORDINATOR, R. E. HOLT,
General Counsel; ANTHONY HAYNES,
and DR. BRUCE COX, Chaplin,

    Defendants.

CIVIL ACTION NO.: CV212-005

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Anthony Davila ("Plaintiff"), who is currently incarcerated at the McDuffie County Detention Center in Thomson, Georgia, filed a cause of action pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), contesting certain conditions of his confinement while he was housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). Defendants filed a Motion for Summary Judgment. Plaintiff filed a Response, and Defendants filed a Reply. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff alleges that he was denied access to Santeria beads and cowrie divination shells that contain "ache". Plaintiff claims these items are necessary to the practice of his religion, Santeria. Plaintiff asserts that he explained to prison officials that these religious items are not available for purchase from approved prison sources. Plaintiff alleges that he has filed administrative remedies in accordance with Bureau of Prisons' policies, and he has sued each person who denied his administrative remedies asserting that they contributed to the alleged deprivation of his freedom of religion.

Defendants assert that they are entitled to summary judgment on Plaintiff's remaining First Amendment claims and claim for injunctive relief under the Religious Freedom and Reformation Act of 1993, 42 U.S.C. § 2000bb, *et seq.* ("RFRA").[1] Defendants also assert that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[1] Plaintiff concurs with Defendants' assertion that Defendants Holt and Gladden were not involved in any alleged unconstitutional conduct. (Doc. No. 72, pp. 18-21; Doc. No. 77, p. 38). The undersigned's Report shall focus on Plaintiff's claims relating to Defendants Haynes and Cox but will use "Defendants" collectively. Regardless of the undersigned's recommended disposition of this Motion, Plaintiff's claims against Defendants Holt and Gladden should be **DISMISSED** in their entirety.

242 (1986)), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

I.  **First Amendment Claims**

Defendants contend that each of the Turner v. Safley, 482 U.S. 78 (1987), factors warrants a finding that the Bureau of Prisons' ("BOP") policy in place did not violate Plaintiff's First Amendment rights. Plaintiff contends that Defendants' application of the BOP's policy to his requests violated his rights.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). Deference is given to prison officials, and, as a result, courts employ a "reasonableness" test to determine whether a regulation infringes constitutional rights. Id. The Supreme Court has outlined four factors to be considered in determining the reasonableness of a regulation: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." Turner, 482 U.S. at 89-91. The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003).

### A. Valid, Rational Connection to Legitimate Governmental Interest

Defendants assert that Defendants Cox and Haynes relied on BOP Program Statement 5360.09 in denying Plaintiff's requests for personal beads and shells. Defendants assert that this Program Statement requires that all personal religious

4

property be purchased from the commissary inventory or through an approved catalogue source. Defendants also assert that the purpose and scope of this Program Statement is to provide "inmates of all faith[s] with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the *security and orderly running* of the institution[.]" (Doc. No. 72, p. 8) (quoting Program Statement 5360.09) (emphasis in original). Defendants aver that Plaintiff was informed during the administrative remedies process that religious items had to be purchased from authorized vendors through a catalogue, order forms are available through the prison chapel, and family members could not send religious items to inmates, primarily for prison security reasons.

Plaintiff asserts that he does not dispute that the safety and security of a federal prison are legitimate governmental interests. However, Plaintiff also asserts, these legitimate governmental interests cannot automatically serve to consider actions taken as a result to be constitutionally permissible.

B.  **Alternative Means**

Defendants assert that the question under this prong is whether Plaintiff had alternative means of practicing his rights. Defendants also assert that Program Statement 5360.09 satisfies this factor because inmates are allowed to buy personal religious items through authorized means. Defendants allege that Plaintiff was informed of the alternative means on no less than three (3) occasions. In fact, Defendants allege, Plaintiff could have purchased cowrie shells and beads through these authorized means.

Plaintiff contends that Defendants have ignored the fact that he informed them, under oath, that the Santeria bead necklaces and cowrie divination shells must contain "ache" and that these items are to be provided only by qualified priests of his religion. Plaintiff alleges that he must wear these items, and these items must contain spiritual presence (or "ache") given by a qualified priest, which is in contravention of Program Statement 5360.09. Plaintiff also alleges that he has no alternative means to exercise his religion, as purchasing these items through authorized vendors does not meet the requirement of his sincerely held religious beliefs.

### C. Impact on Prison Staff, Inmates, and the Allocation of Prison Resources

Defendants contend that Program Statement 5360.09 does not prohibit a prisoner from exercising his First Amendment right; rather, this Statement governs the procedure a prisoner must follow to obtain personal religious items from authorized sources. Defendants contend that allowing unauthorized people to get religious items for inmates would impact prison staff and the other inmates, as allowing this would increase an inmate's ability to smuggle contraband into the prison. Defendants also contend that allowing this practice would require prison staff to spend more time and money screening and examining these items before allowing inmates to have these items.

Plaintiff avers that Defendant Cox could monitor, evaluate, and approve a qualified priest of the Santeria religion to provide the beads and shells containing "ache" just as Defendant Cox's already approved vendors are monitored and evaluated. Plaintiff contends that this would not result in any costs to prison officials.

### D. Regulation an "Exaggerated Response"

Defendants assert that, even though the BOP is not required to narrowly tailor its regulations, Program Statement 5360.09 is the least restrictive means to achieve the BOP's stated goals. Defendants contend that the only alternative would be to allow inmates to obtain items from any source, which would increase security and time concerns. Because of this, Defendants maintain, this "alternative" cannot be considered reasonable under the fourth <u>Turner</u> factor.

Plaintiff asserts that Defendant Cox should have verified the religious significance of his requests for the shells and beads. Plaintiff also asserts that his goddaughter is a qualified priestess. In the alternative, Plaintiff alleges that Defendant Cox could have contacted a qualified priest or priestess who could become an approved source in order for Plaintiff to be able to receive his requested religious materials. Plaintiff contends that the religious items would be sent to Defendant Cox, just as would happen with any catalogue order.

E. **Application**

Program Statement 5630.09, which concerns religious beliefs and practices, was promulgated to "provide[ ] inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the [BOP]." (Doc. No. 72-4, p. 1). According to this Program Statement, inmate "religious property", which "includes but is not limited to rosaries and prayer beads, oils, prayer rugs, phylacteries, medicine pouches, and religious medallions[,]" is "subject to normal considerations of safety and security." (<u>Id.</u> at p. 2). This Program Statement requires that all "personal religious property" "be purchased either from

commissary stock or through an approved [c]atalogue source using the Special Purpose Order process." (Id. at p. 3).

The BOP's regulation requiring personal religious property to be purchased from the commissary stock or approved catalogue sources is reasonably related to the stated goals of budgetary limitations, security concerns, and the orderly running of institutions. Thus, the first Turner factor is met.

Contrary to Plaintiff's assertion, it does not appear that the Program Statement or the Defendants' reliance on this Program Statement, (Doc. No. 72-3, p. 1; Doc. No. 72-7, p. 1), deprives him of the only manner in which to practice his religion. This Program Statement simply restricts *how* Plaintiff can obtain his cowrie shells and bead necklace. There is no evidence that Plaintiff could not obtain these items through an authorized source and then have a qualified member of the Santeria church come to the prison to perform the necessary ceremony or ritual to have these items properly blessed with "ache". Likewise, there is no evidence that Plaintiff's requested shells and beads (i.e., coming from a qualified member of the Santeria church) automatically contained "ache". Plaintiff's assertions point to the importance of the ceremony or ritual involved in infusing "ache" into the beads and shells, not the actual items themselves. (Doc. No. 77, pp. 5-6, 12-20). The second Turner factor has been met.

In addition, the third Turner factor has been met. While Plaintiff makes a valid point that Defendant Cox could provide an accommodation in this case, Plaintiff overlooks that this accommodation would have a tremendous impact on prison personnel, as well as other inmates. If Defendants or the BOP were to provide an accommodation to Plaintiff, every other inmate potentially would want an

accommodation, as well. This would increase the time prison personnel have to take to inspect incoming packages, for instance.

Finally, the undersigned cannot determine that there are alternatives available to the BOP which would be easier to regulate than this Program Statement. This Program Statement appears to apply to inmates of all religions and only limits the sources of religious items for inmates of the many faiths or sects represented by the inmate population.

The limitation of purchasing religious items through pre-approved sources is reasonably related to valid correctional goals. The Program Statement is neutral, advances the stated goals of budgetary and safety concerns, and is not an exaggerated response to those objectives. The Program Statement does not unconstitutionally abridge Plaintiff's (or any other inmate's) right to exercise his religion. As a matter of law, Defendants should be entitled to summary judgment on Plaintiff's First Amendment claims.

## II. RFRA Claim

### A. Mootness

Defendants contend that Plaintiff's remaining injunctive relief claim under the RFRA is moot because Plaintiff is no longer incarcerated at FCI Jesup. Plaintiff asserts that, while he is not housed at FCI Jesup at the moment, his injunctive relief claims under the RFRA are not moot.

Under Article III of the Constitution, federal courts may only hear "cases or controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). "A [claim] is moot when it no longer presents a live controversy with respect to which the court can

give meaningful relief." See Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). A claim can still be considered if a court lacks "assurance that there is no reasonable expectation that the alleged violation will recur," or, as it is commonly stated, the situation is "capable of repetition, yet evading review[.]" DiMaio v. Democratic Nat'l Committee, 555 F.3d 1343, 1345 (11th Cir. 2009); Turner v. Rogers, ___ U.S. ___, 131 S. Ct. 2507, 2515 (June 20, 2011). "However, once a prisoner has been transferred, injunctive relief with respect to his confinement at his former place of incarceration is no longer available." Hampton v. Federal Correctional Institution, No. 1:09-CV-00854-RWS, 2009 WL 1703221, *3 (N.D. Ga. June 18, 2009) (citing McKinnon v. Talladega Cnty., 745 F.2d 1360, 1363 (11th Cir. 1984)); Hailey v. Kaiser, 201 F.3d 447, *3 (10th Cir. 1999) (Table).

Plaintiff is currently housed at McDuffie County Detention Center and is not currently in BOP custody.[2] However, there is nothing before the Court which indicates Plaintiff has been released from federal custody entirely. Rather, Plaintiff is housed at McDuffie pursuant to a federal writ. (Doc. No. 72-12, p. 2). Thus, Plaintiff could be transferred back to FCI Jesup. Plaintiff's claims are capable of repetition and are not moot.

### B. Injunctive Relief Claims Under RFRA

Defendants assert that their actions did not violate the RFRA, and, accordingly, Plaintiff's claims for injunctive relief under this Act must fail. Defendants aver that the BOP has a compelling interest in security and order at its prisons, and

---

[2]http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=50963-018.

Program Statement 5360.09 is the least restrictive means to furthering that compelling interest.

Plaintiff concedes that prison security and institutional safety goals are compelling governmental interests. (Doc. No. 77, pp. 28, 34). However, Plaintiff contends, Program Statement 5360.09 is not the least restrictive means of furthering these governmental interests.

The RFRA, 42 U.S.C. §§ 2000bb to 2000bb-4, forbids the government from "substantially burden[ing] a person's exercise of religion"[3] unless the government can "demonstrate[ ] that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Although the Supreme Court has declared RFRA unconstitutional as applied to the states, the RFRA still applies to acts of the federal government and its officials. Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (stating that, pursuant to RFRA, the federal government must demonstrate a compelling interest when substantially burdening the exercise of religion). The "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 430-31 (quoting 42 U.S.C. § 2000bb-1(b)). "A 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious

---

[3] "Exercise of religion" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

11

precepts or from pressure that mandates religious conduct." Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004). "[I]n order to constitute a 'substantial burden' on religious practice, the government's action must be 'more than incidental' and 'must place more than an inconvenience on religious exercise.'" Smith v. Allen, 502 F.3d 1255, 1277 (11th Cir. 2007) (quoting Midrash Sephardi, 366 F.3d at 1227). "That is, to constitute a substantial burden, the governmental action must significantly hamper one's religious practice." Id. However, in the context of prisons, "courts [should] afford deference to the judgment of prison officials." Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). Once a plaintiff establishes that a regulation imposes a substantial burden on the exercise of his religion under RFRA, the "burden shifts to the government to demonstrate that 'application of the burden' to the claimant 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling governmental interest.'" Kikumura v. Hurley, 242 F.3d 950, 961-62 (10th Cir. 2001) (quoting 42 U.S.C. § 2000bb-1(b)).

The undersigned accepts Plaintiff's assertion that having cowrie shells and beads containing "ache" is a sincerely held religious belief.[4] However, Defendants' application of Program Statement 5360.09 does not impose a substantial burden on Plaintiff's exercise of his religion. Even assuming this to be the case, however, Plaintiff presents nothing which creates a genuine dispute so that his claims for injunctive relief under the RFRA can survive this Motion. Plaintiff concedes that the stated purposes of the Program Statement are compelling governmental interests. This Program Statement appears to be the least restrictive means of furthering those compelling governmental

---

[4] The only evidence that "ache" must be contained in shells and beads is from Plaintiff's handwritten declaration. (Doc. No. 77, pp. 42-49).

12

interests.[5] In addition, this Program Statement does not prohibit Plaintiff's possession of the shells and beads; it only limits the manner in which Plaintiff can purchase these items. Defendants should be entitled to summary judgment on Plaintiff's claims for injunctive relief under the RFRA.

It is unnecessary to address Defendants' assertion that they are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 22nd day of January, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[5] Although the burden on the government is higher under the RFRA than the First Amendment, the undersigned's discussion in Section I of this Report is relevant under the RFRA, too.