# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

ANTHONY DAVILA,

    Plaintiff,

v.

WARDEN JOHN V. FLOURNOY; and
CHAPLAIN KENNETH HARRIS, JR.,

    Defendant.

CIVIL ACTION NO.: 2:12-cv-5

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Presently before the Court is Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment, (doc. 119), and Plaintiff's Response thereto.[1] For the reasons and in the manner set forth below, I **RECOMMEND** that the Court the Court **DENY** Defendants' Motion for Summary Judgment.[2]

## **BACKGROUND**

Plaintiff, an inmate at the Federal Correctional Institute ("FCI") in Jesup, Georgia, and a Santeria priest, initially filed a Complaint against: Robin Gladden, the National Inmate Appeals Coordinator; Anthony Haynes, the warden of FCI at the time of the lawsuit; and Dr. Bruce Cox, the chaplain of FCI at the time of the lawsuit. (Doc. 1.) Plaintiff subsequently amended his Complaint, alleging that FCI's policy to only allow inmates to obtain religious articles from approved vendors restricts his ability to practice his religion. (Doc. 14, at pp. 3–4.) Specifically,

---

[1] Plaintiff filed a Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment. (Doc. 121.) The Court **GRANTS** Plaintiff's Motion, and Plaintiff's Response, (doc. 122), is deemed timely filed.

[2] Defendants withdrew their Motion to Dismiss in their Reply to Plaintiff's Response. (Doc. 124, p. 2.)

Plaintiff explained that his religion requires him to wear Santeria beads and cowrie divination shells that have been infused by a special ceremony with the spiritual force, Ache. (Id. at p. 4.) Items purchased from the prison catalogue—and hence, the approved vendors—have not undergone this ceremony and lack this spiritual force. (Id. at p. 5.) Plaintiff contended that Defendants violated his rights by not allowing his goddaughter to send him his personal beads and shells that were infused with Ache. (Id. at p. 4.) Plaintiff's Complaint was served based on Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb, *et seq.* (Docs. 21, 22.)

Defendants filed a Motion to Dismiss, (doc. 39), which this Court granted in part and denied in part, (doc. 58). Plaintiff's First Amendment claims under Bivens and injunctive relief claims under RFRA were allowed to proceed. (Doc. 58, p. 5.) Subsequently, Defendants filed a Motion for Summary Judgment, (doc. 72), which this Court granted in full, dismissing the remainder of Plaintiff's claims, (doc. 85). However, Plaintiff filed an appeal with the Eleventh Circuit Court of Appeals, (doc. 87), and, on appeal, the Eleventh Circuit affirmed in part, reversed in part, and remanded for further proceedings. (Doc. 97.) Specifically, the Eleventh Circuit reversed this Court's grant of summary judgment on Plaintiff's claim for injunctive relief under RFRA. (Id. at p. 31.)

After remand, Defendants Bruce Cox and Anthony Haynes moved to dismiss Plaintiff's RFRA claim for lack of jurisdiction on December 28, 2015. (Doc. 102.) Defendants asserted that the new chaplain at FCI, Kenneth Harris, allowed Plaintiff to receive his personal Santeria necklaces and shells, thereby mooting Plaintiff's request for injunctive relief. (Id.) Furthermore,

2

in an affidavit, Harris averred that he would continue to allow Plaintiff to receive his requested items along with appropriate replacements. (Doc. 102-1.) Plaintiff filed a Response in Opposition and a Motion to Amend his Complaint, contending that Harris has continued to restrict Plaintiff's ability to obtain religious items. (Docs. 104, 107.) The Court granted Plaintiff's Motion to Amend and dismissed as moot Defendants' Motion to Dismiss. (Doc. 114.)

Plaintiff filed his Second Amended Complaint, (doc. 115),[3] to which Defendants filed the present Motion to Dismiss or in the Alternative, Motion for Summary Judgment. Plaintiff filed a Response in Opposition, Defendants filed a Reply, (doc. 124), and Plaintiff filed a Sur-Reply, (doc. 125).[4]

In February 2016, Plaintiff attempted to obtain additional Santeria beads from a Santeria priest, Alicia Lastra. (Doc. 115, p. 4.) Defendants denied this request citing a new policy implemented in April of 2015, following the Eleventh Circuit's decision in this case. (Id. at pp. 5–7.) Under this new policy, inmates obtaining religious goods from unapproved BOP sources must request and receive approval from Defendant Harris prior to obtaining a BP-331 form. (Doc. 122-1, p. 2.) This BP-331 form authorizes inmates to receive specific packages from senders—here religious goods from unapproved vendors—containing only those items listed on the form. (Doc. 115, p. 4) In order to obtain approval, the anticipated sender must undergo and pass a criminal background check, as well as be added to the inmate's visitation list.

---

[3] In his Second Amended Complaint, Plaintiff clarified that he sought to "substitute[ ] the previous defendants with their successors[,]" Warden Flournoy and Chaplain Harris, because the previous defendants no longer worked at FCI. (Doc. 115, p. 1.); see also Fed. R. Civ. P. 25(d). Defendants Flournoy and Harris agree that they are due to be substituted as Defendants. (Doc. 119, p. 1 n. 1.) Accordingly, the Court **AUTHORIZES** and **DIRECTS** the Clerk of Court to terminate Defendants Haynes and Cox upon the docket and record of this case.

[4] The following recited allegations are taken from Plaintiff's Second Amended Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party. Johnson v. Booker T. Washington Broad Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

(Id.)  However, the policy provides no time limitation for the approval process, and Defendant Harris ultimately retains "sole discretion."  (Id. at p. 5; Doc. 122, p. 16.)  Defendant Harris told Plaintiff that his request for additional Santeria items was denied because Lastra had not undergone a background check and was not on Plaintiff's approved visitors list.

However, Plaintiff avers that when he attempted to obtain his personal Santeria beads and cowrie shells from his goddaughter in December 2015, she did not have to undergo a background check, and he only had to fill out a BP-331 form.  (Doc. 115, pp. 2–3.)  Under either policy, the BP-331 form requires that the sender "mail the sacred religious items, directly to the . . . Chaplain . . . or his subordinates . . . . [where] they would receive and inspect the items [before delivering it] to the Santeria inmate."  (Id. at p. 4.)  This inspection by the chaplain is in addition to the standard prison mailroom inspection.  (Doc. 122-1, p. 16.)

Furthermore, Plaintiff alleges that Defendant Harris inconsistently applies this new policy amongst prisoners, and in particular imposes more stringent restrictions on him than on other Santerian inmates.  (Doc. 115, pp. 6–7.)

## DISCUSSION

Defendants argue in their Motion that their policy does not violate RFRA because it does not constitute a substantial burden on Plaintiff's exercise of religious beliefs, and even if it did, the policy serves a compelling governmental interest that is narrowly tailored to protect that interest.  (Doc. 119, pp. 1–2.)

### I. Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is

inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

## II. RFRA Claim for Injunctive Relief

"Congress enacted RFRA . . . in order to provide very broad protection for religious liberty." Burwell v. Hobby Lobby Stores, Inc., ___ U.S. ___, 134 S. Ct. 2751, 2760 (2014). Under the statute, the "Government shall not substantially burden a person's exercise of religion

even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb–1(a). If the Government takes action that substantially burdens a person's exercise of religion, it must "demonstrate[ ] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b); see also, Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (pursuant to RFRA, the federal government must demonstrate a compelling interest when substantially burdening the exercise of religion).

"RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 430–31 (quoting 42 U.S.C. § 2000bb-1(b)). The Supreme Court has observed that the test for whether a person's religious exercise is substantially burdened is not "whether the religious belief asserted in a RFRA case is reasonable." Hobby Lobby, ___ U.S. at ___, 134 S. Ct. at 2778. Instead, the Court must look to "whether the [government's rule] imposes a substantial burden on the ability of the objecting part[y] to conduct [himself] in accordance with [his] religious beliefs." Id. (emphasis omitted); see also Yellowbear v. Lampert, 741 F.3d 48, 55 (10th Cir. 2014) (noting that a burden is substantial when it "prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief").

**A.  Substantial Burden on Religious Exercise**

First, under RFRA, a plaintiff must show that the Government has substantially burdened his exercise of religion. 42 U.S.C. § 2000bb–1(a). RFRA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."

6

42 U.S.C. § 2000bb-2. Furthermore, when evaluating religious exercise, it is not the Court's role to determine whether a plaintiff's "religious beliefs are mistaken or insubstantial. Instead, our 'narrow function . . . in this context is to determine' whether the line drawn [between conduct that is and is not permitted under one's religion] reflects an honest conviction." Hobby Lobby, ___ U.S. at ___, 134 S. Ct. at 2779 (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 716 (1981)). The Court looks only to see whether "the claimant is (in essence) seeking to perpetrate a fraud on the court—whether he actually holds the beliefs he claims to hold." Yellowbear, 741 F.3d at 54. At this stage of the litigation, Defendants do not dispute the sincerity of Davila's religious beliefs. (Doc. 119, p. 11.)

Second, the Court must evaluate whether Plaintiff's religious exercise was substantially burdened by Defendants' actions. To constitute a substantial burden, "the government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.' That is, to constitute a substantial burden [ ], the governmental action must significantly hamper one's religious practice." Smith v. Allen, 502 F.3d 1255, 1277 (11th Cir. 2007) (citation omitted) (quoting Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004)), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. ___, 131 S. Ct. 1651 (2011). Furthermore, the test for whether a person's religious exercise is substantially burdened is not "whether the religious belief asserted in a RFRA case is reasonable." Hobby Lobby, ___ U.S. at ___, 134 S. Ct. at 2778. Instead, the Court looks to "whether the [government's action] imposes a substantial burden on the ability of the objecting part[y] to conduct [himself] in accordance with [his] religious beliefs." Id.

Here, Plaintiff's religious beliefs require him to wear beads and shells infused with Ache. Defendants argue that Plaintiff's religious beliefs have not been substantially burdened because

Plaintiff can still acquire his religious articles from unapproved vendors. According to Defendants, under the new policy Plaintiff simply has to ensure that the sender of religious goods be on his visitation list and undergo a background check. (Doc. 119, p. 12.)

However, Plaintiff argues that the policy, as applied, constitutes a substantial burden on his religious beliefs. First, Plaintiff provides evidence that the policy is under-inclusive as some inmates have received packages even without fulfilling the visitation and background check requirements. Second, construing the facts in the light most favorable to Plaintiff, there is no timeframe for which the chaplain must render his decision, and ultimately, the chaplain retains discretion over whether the inmate may obtain a package authorization form for the religious items. Thus, while Defendants' policy ostensibly changed since this case was before the Eleventh Circuit, it still appears that there is at least an issue of fact as to whether Defendants continue to prevent Plaintiff from obtaining religious items under this new policy. Therefore, as already held by the Eleventh Circuit, this Court cannot find as a matter of law that Defendants have not substantially burdened Plaintiff's religious exercise. (Doc. 97, p. 10.)[5]

### B. In Furtherance of a Compelling Governmental Interest

Because the record, when construed in favor of Plaintiff, establishes that Defendants' policy substantially burdened his exercise of religion, the burden then shifts to Defendants to demonstrate that their actions are in furtherance of a compelling governmental interest and were the least restrictive means of furthering that interest.

---

[5] Defendants argue in their Reply brief that Plaintiff lacks standing to challenge the inconsistencies in the new policy. Specifically, Defendants state that Plaintiff "points to no evidence . . . that the lack of a time limitation adversely affected him at all." (Doc. 124, p. 3.) However, this line of argument inappropriately narrows the scope of analysis for standing. To have standing, Plaintiff must simply show that he suffered an actual, concrete and particularized "injury in fact," that is "fairly . . . trace[able] to the challenged action of the defendant" and that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Plaintiff has alleged more than enough to meet this standard—particularly because this new policy, as applied, has prevented him from acquiring the items he needs to exercise his religious belief.

8

Defendants argue that the visitation list and background check requirements reduce the risk of contraband entering the facility. (Doc. 119, p. 15.) Defendants further argue these requirements help reduce the risk of disputes between inmates. Preventing the flow of contraband and maintaining security in a prison are indisputably compelling governmental interests. Holt v. Hobbs, ___ U.S. ___, 135 S. Ct. 853, 863 (2015) ("We readily agree that the Department has a compelling interest in staunching the flow of contraband into and within its facilities . . ."); Fawaad v. Jones, 81 F.3d 1084, 1087 ("maintaining security in a prison constitutes a compelling governmental interest").

However, as Plaintiff sets forth in his Response, Defendants have failed to prove, for purposes of summary judgment, that the new prison policy actually furthers those interests. (Doc. 122-1, p. 14.); see Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 533 (11th Cir. 2013) (finding that "[w]hile safety and cost can be compelling governmental interests, the Defendants have not carried their burden to show that [the] policy in fact furthered these two interests" for summary judgment purposes). In making this determination, the Court gives "due deference to the experience and expertise of prison and jail administrators," but notes that "policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements." Rich, 716 F.3d at 533 (citations and quotation marks omitted).

In this case, Defendants provide scant evidence to support their assertions that the new policy will further their interests in security and reducing inmate disputes. In their Motion for Summary Judgment, Defendants only provide an affidavit from Defendant Harris to support their concerns that contraband could be sent through the packages and that "prison officials have learned through years of working with inmates" that a visitation list requirement "preserves institutional order among the inmates." (Doc. 119-3, p. 4.) However, as the Eleventh Circuit

aptly noted during Plaintiff's appeal, "Defendants' generalized statement of interests, unsupported by specific and reliable evidence, is not sufficient to show that the prison restriction furthered a compelling governmental interest." Davila v. Gladden, 777 F.3d 1198 (11th Cir. 2015). Even after appeal, Defendants have failed to provide evidence to support their "generalized statement of interests."

Moreover, Defendants have failed to explain why these compelling governmental interests require restrictions on Plaintiff's religious items that are not placed on other items sent to inmates. The prison's new policy imposes a background check and visitation list requirement in addition to the screenings conducted by the mailroom and Defendant Harris' staff. Given these additional restrictions, and the inconsistencies in the enforcement of the policy discussed below, Defendants have failed to demonstrate that the restrictions they are placing on Plaintiff's religious items are grounded in their proffered objectives. See Holt, ___ U.S. at ___, 135 S. Ct. at 866 ("Although the Department's proclaimed objectives are to stop the flow of contraband and to facilitate prisoner identification, '[t]he proffered objectives are not pursued with respect to analogous nonreligious conduct,' which suggests that 'those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree.'") (quoting Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 546 (1993)).

Furthermore, even if the visitation list requirements and background checks do support the prison's compelling interests in prison security, the prison's policy as applied does not. Plaintiff provides ample evidence indicating that even after the policy was implemented, Lastra was able to send religious articles to multiple other inmates without having undergone a background check or appearing on the other inmates' visiting lists.[6] (Doc. 122-2, pp. 5–20.)

---

[6] The Court notes that in support of Defendant's Motion for Summary Judgment, Defendant Harris provided an affidavit specifically declaring that Alicia Lastra "was on the Visiting List of another inmate

However, there is no evidence that this action resulted in either an increase in contraband sent to the prison or increased "conflict between inmates." (Doc. 119-3, p. 4.) In response to Plaintiff's argument that the new policy is substantially under-inclusive with respect to addressing Defendants' compelling interests, Defendants attempt to argue that the policy was only "fluid" during implementation and hence, not enforced consistently. (Doc. 124-1, p. 3.) Regardless, there are no assurances that the "fluid" application of the new policy will be or has been terminated. In fact, other than an instructional e-mail to the other chaplains on April 7, 2015, there is no documentation supporting the implementation or existence of this new policy. (Doc. 124-1, p. 6.) Furthermore, these "implementation" inconsistencies occurred even up until February 11, 2016, nearly a year after the e-mail was sent out. Thus, at the very least, an issue of fact exists as to whether prison officials have subjected and will subject Plaintiff's receipt of religious items to more stringent policies than other inmates. These inconsistencies undermine Defendants' arguments that the restrictions they are placing on Plaintiff's religious items are grounded in legitimate security concerns.

---

at FCI Jesup" and not on Plaintiff's visiting list. (Doc. 119-3, p. 5.) However, after receiving Plaintiff's Response, which included evidence in support of his assertion that Ms. Lastra had never appeared on any inmate visitation list, Defendant Harris issued a new affidavit stating that "[i]n response to Davila's allegation that Ms. Lastra was not on any inmate's visiting list, I reviewed records available to me and am unable to locate any record of Ms. Lastra appearing on the visiting list of any inmate at FCI Jesup." (Doc. 122-1, p. 5.) Needless to say, it is distressing to the Court that a prison official would make a representation in a sworn affidavit and then be forced to later recant that representation.

Unfortunately, this is not the only inconsistency found within Defendants' affidavits. Defendants also submitted an affidavit from J. Latease Bailey in support of their Motion for Summary Judgment. In that affidavit, Ms. Bailey declares that "Inmate Davila's contention that he appealed this issue to the Central Office level, but did not receive a response is not supported by the record . . . . Although it is possible that inmate Davila sent an appeal to the Central Office and it was not received, it is not probable." (Doc. 119-2, p. 4.) However, again in his Response, Plaintiff provides not only a copy of the appeal he sent via U.S.P.S. Certified Mail, he also provides a copy of the tracking history indicating that it was received by the Central Office, and yet not recorded in the prison's Administrative Remedy Log. While the Court does not consider these inconsistencies to rise to the level of affidavits or declarations submitted in bad faith under Federal Rule of Civil Procedure 56(h), the Court does find it concerning that Plaintiff, despite his significantly more limited resources, is able to provide the Court with a more accurate and supported factual account than Defendants.

On this record, Defendants have failed to demonstrate as a matter of law that the restrictions they are placing on Plaintiff's receipt of religious items, including background checks and visitation list requirements, further the prison's interests in maintaining security and harmony between inmates.

**C.     Least Restrictive Means**

Even if the Court were to find that Defendants' new policy furthered a compelling interest, Defendants have failed to prove that the new policy, as applied, is the least restrictive means for furthering that interest. When assessing Defendants' showing on this front, the Court "must hold prisons to their statutory burden, and [it] must not 'assume a plausible, less restrictive alternative would be ineffective.'" Holt, ___ U.S. at ___, 135 S. Ct. at 866 (quoting United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 824 (2000)).

The Bureau of Prisons Program Statement clearly contemplates inmates receiving packages and yet provides no requirement for a visitation list and background check. (Doc. 122-2, p. 76.) The only procedure set forth is for inmates to fill out the BP-331 form. As the Eleventh Circuit noted, Defendants have not answered the "important questions about what procedures the prison already has in place to screen items brought in from outside the prison; how effective those existing procedures are; and how burdensome it would be to simply screen religious items through that same established procedure." Davila, 777 F.3d at 1207. Indeed, if Defendant Harris or other members of his staff already search Plaintiff's religious items in addition to the prison mailroom staff, that procedure appears fully sufficient to prevent Plaintiff from receiving contraband. Thus, the additional restrictions of only allowing Plaintiff to receive items from senders who have undergone a criminal background check and who have been placed on his visitor list appear wholly unnecessary to satisfy Defendant's security concerns. See Holt,

___ U.S. at ___, 135 S. Ct. at 864 ("The Department failed to establish that it could not satisfy its security concerns by simply searching [plaintiff's] beard.").

In addition, Plaintiff provides evidence that another inmate, while at the Federal Medical Center in Butner, North Carolina, was able to request and receive Santeria necklaces simply by filling out the same BP-331 form. Defendants disclaim the relevance of this fact by simply stating that it is "a completely different facility." (Doc. 124, p. 5 n.2.) However, "[w]hile not necessarily controlling, the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction." Procunier v. Martinez, 416 U.S. 396, 414 n.14 (1974); see also, Holt, ___ U.S. at ___, 135 S. Ct. at 866 (discussing less restrictive policies of other prisons). On its face, Plaintiff's evidence regarding the Federal Medical Center in Butner, North Carolina, seems to indicate that there is in fact a less restrictive means to accommodate a Santerian inmate's need to acquire religious objects.

"The least-restrictive means standard is exceptionally demanding." Hobby Lobby, ___ U.S. at ___, 134 S. Ct. at 2780. Defendants have not met that standard in this case.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Defendants' Motion for Summary Judgment. (Doc. 119.)

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections **within fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served

upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a District Judge of this Court will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part the findings or recommendations herein. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of January, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA